**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **CASE NO. 3:00-CR-00204-EBB** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JOHN HACKNEY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT HACKNEY'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RESENTENCING PURSUANT TO *CROSBY***

COMES NOW Defendant JOHN A. HACKNEY, by and through the undersigned

counsel, and respectfully submits this Memorandum of Law in support of his Motion for

Resentencing. In response to the Court's Order of February 23, 2007, directing counsel

"to report to the Court…as to whether defendant should be resentenced," Defendant

submits the following grounds and authorities.

**I.     INTRODUCTION**

The sole issue presently before the Court is whether to grant John Hackney a

resentencing hearing.   Mr. Hackney was sentenced before this Honorable Court on

January 4, 2005, eight (8) days prior to the Supreme Court's decision in United States v.

Booker, 543 U.S. 220 (2005).  Because Mr. Hackney was sentenced prior to the Booker

opinion, this Court was precluded from considering the mitigating factors set forth in 18

U.S.C. § 3553(a), in imposing Mr. Hackney's sentence.   At sentencing the Court noted

that although the future of the Sentencing Guidelines was uncertain, "the District Court

has been advised to operate as if that [sic] were still in effect."   Transcript of Sentencing

Hearing, January 4, 2005, at 31. (Ct. Doc. 13). In other words, the Court sentenced Mr. Hackney under the mandatory framework of the sentencing guidelines.

Mr. Hackney was similarly constrained in his presentation at sentencing and therefore did not present or develop 3553(a) factors at his sentencing to assist the Court in determining a just sentence. Accordingly, although the Court was able to consider factors in determining whether to sentence Hackney at the low end of the guideline range and/or whether to grant a downward departure from the applicable guideline range, the Court was unable to consider whether Mr. Hackney should receive a sentence ***outside the guideline range***, in light of <u>Booker</u> and the mitigating factors set forth in 18 U.S.C. § 3553(a). [Hackney] Sentencing Memorand[um] at 4. (Ct. Doc. 24). Given that such information was not properly before the Court at the time of Hackney's sentencing due to the fact that <u>Booker</u> was undecided, the Court was required to apply the Federal Sentencing Guidelines as mandatory, rather than advisory.

## II.    PROCEDURAL HISTORY

The Defendant pled guilty before this Court on September 22, 2000, to one count of aiding and abetting and money laundering in violation of 18 U.S.C. § 2 and 1956(a)(2)(A) in case no. 3:00-cr-00204-EBB-ALL.[1] <u>See</u> Plea Agreement (Ct. Doc. 2). On the same day, an Information was filed in case no. 3:00-cr-00203-EBB-ALL, alleging one count of RICO in violation of 18 U.S.C. § 1962(d) and Mr. Hackney contemporaneously entered a guilty plea to this count. <u>See</u> Information (Ct. Doc. 1); <u>see also</u> Plea Agreement (Ct. Doc 3). Following Mr. Hackney's entries of guilty pleas in each matter, these cases remained pending while awaiting sentencing for almost four (4)

---

[1] This case was transferred from the Middle District of Tennessee to the District of Connecticut under Fed. R. Crim. P. 20 on September 22, 2000, the same day Hackney entered his plea of guilty. <u>See</u> Rule 20 – Transfer In, case no. 3:00-cr-00204-EBB-ALL (Ct. Doc. 1).

years, and unusually long period of time under any circumstances, during which time Mr. Hackney cooperated with the Government in its investigation of related crimes involving Martin Frankel and others.

On January 4, 2005, this Court held a sentencing hearing in both matters. See Sentencing (Ct. Doc. 9) and Transcript (Ct. Doc. 13), case no. 3:00-cr-00204-EBB-ALL; see also Sentencing (Ct. Doc 23) and Transcript (Ct. Doc. 31), 3:00-cr-00203-EBB-ALL. The Government filed a Motion for Departure pursuant to Section 5(K)(1) of the Federal Sentencing Guidelines and a separate Memorandum in Support in case no. 3:00-cr-00203-EBB-ALL.[2] (Ct. Docs. 21 and 22). Subsequently, the Court entered separate judgments in which it made the following findings: (1) Hackney was guilty of one count of Aiding and Abetting and Money Laundering in violation of 18 U.S.C. § 2 and 1956(a)(2)(A) (case no. 3:00-cr-00204-EBB-ALL only) and one count of RICO in violation of 18 U.S.C. § 1962(d) (case no. 3:00-cr-00203-EBB-ALL); (2) Hackney's offense concluded in May 1999 (both cases); (3) Hackney would make restitution payments in the amount of $1,000 per month (both cases); and (4) Hackney would serve concurrent forty-eight (48) month terms of imprisonment (both cases). See Judgment, case no. 3:00-cr-00204-EBB-ALL, at 1 (Ct. Doc. 28); see also Judgment, case no. 3:00-cr-00203-EBB-ALL, at 1. (Ct. Doc. 28).

Following sentencing, timely notices of appeal were filed with the district court in both cases on January 18, 2005. See Notice of Appeal, case no. 3:00-cr-00204-EBB-ALL (Ct. Doc. 15); see also Notice of Appeal, case no. 3:00-cr-00203-EBB-ALL (Ct. Doc. 36). Through some undetermined court error, the notice of appeal in both cases

---

[2] On the face of the Government's Memorandum in Support of its Motion for Departure, the caption only reflects case no. 3:00-cr-00203-EBB-ALL, and no corresponding motion or memorandum is docketed in case no. 3:00-cr-00204-EBB-ALL.

went unacknowledged by the appellate court until brought to the attention of the Court by Mr. Hackney's new counsel in the summer of 2006.  Finally, on August 17, 2006, the appellate process commenced.  See Acknowledged Receipt of Index (Ct. Doc. 17).

Following discussions about this case between the undersigned counsel and counsel for the United States, the Government filed a Motion in the appellate court for limited remand on December 15, 2006, based upon the Second Circuit's opinion in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005).  The appellate court issued an Order for limited remand in response to the Government's motion and the district court docketed a mandate for limited remand on January 24, 2007 (Ct. Doc. 25).  On February 23, 2007, this Court directed Hackney to address whether it should resentence him by March 16, 2007.  (Ct. Doc. 26).

It has recently come to the undersigned counsel's attention that a motion for limited remand was not filed in case no. 3:00-cr-00203-EBB-ALL, and the appeal has been dismissed.  Defendant plans to file an unopposed motion to reinstate the appeal in that case and the Government has agreed to file the same motion for limited remand. Because the issues are the same and are addressed herein, the Defendant has no objection to proceeding as directed by the Court.

###    III.    LEGAL AUTHORITIES

In United States v. Booker, 543 U.S. 220 (2005), 125 S. Ct. 738, 160 L.Ed. 2d 621 (2005), the Supreme Court of the United States held that the Federal Sentencing Guidelines were no longer mandatory, but advisory.   This decision dramatically broadened the sentencing options and discretion available to a sentencing judge. Following Booker, courts should now consider the impact of factors set forth in 18

U.S.C. § 3553(a) in addition to the now advisory Sentencing Guidelines calculation, before imposing any sentence. The Second Circuit's opinion in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005), requires this Court to ascertain whether it would have "imposed a materially different sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-Booker/Fan Fan regime and counsel had availed themselves of their new opportunities to present relevant considerations ..." Crosby, 397 F.3d at 117.

These relevant factors contained in § 3553(a) are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Whereas previously courts could not employ these § 3553(a) factors to issue a sentence outside the strictures of the Federal Sentencing Guidelines, Crosby affords counsel the opportunity to present, and the Court the opportunity to consider, "the totality of the facts and circumstances of [a] case." United States v. Lowrey, 2006 WL 1991764 *2 (D.Conn. 2006). As rearticulated in a recent holding of this Court, Judge Arterton

explained that the Federal Sentencing Guidelines no longer serve as rigid parameters within which a court's discretion is restrained:

> As interpreted in Crosby, the Booker decision rendered the Sentencing Guidelines advisory, to be considered by the sentencing court alone with the other factors in 18 U.S.C. § 3553(a) in arriving at an appropriate sentence. Crosby, 397 F.3d at 111-12. The Second Circuit declined to define "what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range," preferring "to permit the concept of 'consideration' ... to evolve as district judges faithfully perform their statutory duties." Id. at 113. As the Second Circuit recently explained, "[c]onsideration of the § 3553(a) factors is not a cut-and-dried process of fact-finding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2nd Cir. 2006); accord [United States v. ]Williams, 2007 WL 241296, at *6 [(2nd Cir. January 30, 2007)]. Thus under the new sentencing regime the proper procedure is for the sentencing court first to calculate the applicable Guidelines sentence, including any departures warranted by the Guidelines, and then decide, based on all the factors in § 3553(a), whether to sentence within the Guidelines range or impose a non-Guidelines sentence. Crosby, 397 F.3d at 111-13.

United States v. Chen, 2007 WL 549739 *1 (D. Conn. February 16, 2007).

Upon an appellate court's post-Crosby remand to consider whether to resentence a defendant, "A district judge need only determine that the original sentence would have been **nontrivially different** and need not determine what the sentence would have been." Crosby, 397 F.3d at 118 n.20. (emphasis added).

A review of the transcript of the sentencing hearing clearly indicates that the Court, having been instructed to continue to apply the Sentencing Guidelines' mandatory framework, did not discharge post-Booker obligations, nor did Mr. Hackney's counsel avail himself of new opportunities to present relevant information in this regard. See Transcript at 17.

As set forth more fully below, Mr. Hackney contends that resentencing is warranted in this case upon the Court's consideration of factors that existed at the time and are now properly available for its consideration in imposing a sentence.

## IV.    ARGUMENT

At Mr. Hackney's sentencing on January 4, 2005, Mr. Hackney was unable to proffer and the Court was unable to consider § 3553(a) factors under the pre-<u>Booker</u> mandatory Sentencing Guidelines regime.  As the Court then noted, the only matters that were considered were "the various offenses which were committed, and the assistance which the Defendant provided to the Government."  Transcript at 29.  Had the Court heard and given full consideration to the § 3553(a) factors below, Mr. Hackney asserts that the Court would have imposed a nontrivially different sentence and therefore, resentencing is warranted.

  A.    § 3553(a)(1): The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense.

  1.  *History and Characteristics of John Hackney.*

The breadth and depth of letters submitted to the this Court prior to sentencing in mitigation of John Hackney's sentence – from family members and friends and community and civic leaders – demonstrate the extent to which John Hackney has made a positive impact on his community and the lives of others.  In imposing the sentence in this case, the Court followed the calculated guideline range contained in the Defendant's Presentence Report and the Government's Motion for Departure.  However, it appears that the content of these letters were not factors which the Court considered as part of the motion for downward departure, which by its very nature, was the only item for the Court's consideration under the pre-<u>Booker</u> guideline framework.  In fact, the Court

made no mention that it had even considered these letters in determining a sentence.  See

Transcript at 28-35.  Mr. Hackney asserts that the Court's consideration of these letters as

a § 3553(a)(1) factor to impose a non-guidelines sentence warrants resentencing in that it

is likely to result in a nontrivial difference.

A sampling of statements from the letters this Court received prior to Mr.

Hackney's sentencing speak to the history and characteristics of John Hackney as

follows:[3]

> "Judge, remember that Johnny was the one who had to face the people of
> Franklin, Tennessee and watch as all these events unfolded.  He did not flee the
> country, or try and hide, but rather he stayed and watched his whole life unravel
> before the eyes of the world."
>
>         -  Letter from W. Charles Doerflinger of Lawrenceburg, TN, 6/9/2003
>
> "Until 1989, John resided in Nashville, Tennessee.  During that time, John was
> active in any number of charitable pursuits...John also served as a volunteer
> counselor at the Crisis Call Center as well.  At first, I was somewhat perplexed by
> this choice.  I later came to realize that this was something of an extension of
> what he had done for me and many of his friends in their times of depression,
> divorce, or any number of problems one might encounter."
>
>         -  Letter from Joseph C. Horne of Franklin, TN, 10/14/2002
>
> "John Hackney, [ ] deeply regrets his involvement in this matter...He has lost his
> home, his vacation home, his life savings, his children's college fund, the
> company he thought he was building, a challenging and rewarding job, and most
> importantly, his hard earned standing in the community, his good reputation, and
> many of his former friends.  He will forever carry the stigma of being a convicted
> felon in a well-publicized case, and will never again enjoy some of the rights that
> other Americans take for granted."
>
>         -  Letter from P. Michael Saint of Hingham, MA, 9/1/2002

---

[3] The Defendant was provided with copies of letters the Probation Office received from the Defendant's
family, friends, colleagues, and other community leaders.  The Defendant has excerpted representative
portions of only a few of these letters in this section to assist the Court in determining that resentencing is
in order and understands that the Court has copies of the same.  Should the Court require copies of these
letters, the Defendant will gladly and promptly supplement the record with such at the pleasure of the
Court.

"Finally, I urge the Court to consider the many admirable things John Hackney has done for his Church, his community, and for civic and charitable organizations, not only during his years as president of Franklin American Life Insurance, but for many years <u>before</u> he ever heard of Martin Frankel. John's many contributions have often been anonymous or have involved an extensive personal time commitment."

-    Letter from P. Michael Saint of Hingham, MA, 9/1/2002

"I was the Marketing Manager for Franklin American Life and reported directly to Mr. Hackney. During the six years I worked for Mr. Hackney he was always willing to provide our customers and policy holders with very fair products and services. That is often very hard to find in the insurance industry. He always treated his employees with great respect. He was indeed a joy to work with. Keeping in mind the thing I admired most in John was his dedication to family. I can safely say in my lifetime, I have never known anyone more dedicated to family than John. We could all take lessons from him."

-    Letter from Jerry Poindexter of 6/16/2004

"I went to work at Franklin American Life Insurance with John in August of 1994…He was always ready to listen and was never to busy to lend a hand or help in some way. Anytime I needed John, as president of the company, to make a sales call either in town or out of town, he always found the time to work my needs into his schedule."

-    Letter from Janet Poindexter of 6/11/2004

"I have known and worked with John for nearly 20 years. As a citizen of the State of Tennessee John gives selflessly of his time and energy to numerous charities and civic organizations."

-    Letter from Mike Williams of Franklin, TN, rec'd 3/3/2003

More weight can and should be given to Mr. Hackney's history and characteristics in a post-<u>Booker</u> sentence. Thus, should the Court receive evidence regarding Mr. Hackney's role as a father, civic leader, and businessman and other relevant evidence as allowed under § 3553(a)(1) at a full resentencing hearing, the Defendant believes this evidence would have a nontrivial impact on the severity of his sentence.

9

2. *The Nature and Circumstances of the Offense.*

At the sentencing hearing, certain statements were made both by counsel for the Defendant and the Government pertaining to the nature and circumstances of the offense. However, these statements were made in the context of departure from the mandatory guidelines calculated for a $200,000,000 fraud. Because of this context, the nature and circumstance of Mr. Hackney's actual role in the offense was not fully explored or considered at his sentencing. Should Mr. Hackney be afforded the opportunity to develop the issue further, the information would yield a nontrivially different sentence.

The information before the Court at the sentencing hearing was a mere snapshot of what could have been developed had <u>Booker</u> been decided ten (10) days earlier. For instance, at sentencing the Court was presented with information that Hackney was an "inexperienced industry specialist [and]…not an insurance man." Transcript at 10. Mr. Hackney's counsel also stated that he "should have been able to rely on the advice of counsel, as well as the accountants who were regularly involved in those industries. They failed him. He failed himself because he didn't ask the right questions." <u>Id.</u> Thus, prior to the offense, Mr. Hackney possessed no specialized knowledge, experience, or skill that he employed to perpetrate the offense. Instead, Mr. Hackney's lack of savvy and naiveté led him down the path of his misconduct. However, there was no evidence that Mr. Hackney's misconduct was commonplace or characteristic of Hackney prior to his regrettable association with Mr. Frankel.

As for Mr. Hackney's conduct during the offense, the Government itself stated, "The evidence does not support any finding that Mr. Hackney personally knew what Frankel was, in fact, doing with the assets he was taking from these insurance companies.

10

He knew Frankel was taking them. He believed that they were being invested. There's a clear distinction between Mr. Frankel and some of the other people who have appeared before your Honor and Mr. Hackney." Id. at 22. Mr. Hackney's role was described by the Government as something akin to an enabler or facilitator, but not the engineer, mastermind, or lynchpin of the fraud at issue. Finally, following his association with Frankel, Mr. Hackney spent approximately four (4) years cooperating extensively with the Government to bring other bad actors involved in the criminal scheme to justice. Given that Mr. Hackney was not calling the shots during the course of Frankel's scheme nor was he aware of Frankel's criminal misappropriation of investments, Hackney's sentence should be revisited by this Court particularly in light of the fact that Mr. Hackney has been by all accounts an upstanding citizen before and after his association with Mr. Frankel.

Section 3553(a)(1) directs that the Court not only take into account the nature of the offense, but also its circumstances. Although highly relevant at sentencing, John Hackney's history and characteristics do not diminish the seriousness of his offenses. The Defendant pled guilty to charged conduct involving very serious matters. However, if the Court views the totality of the circumstances before, during, and after Mr. Hackney's misconduct, the Defendant believes that the Court will conclude that a nontrivial difference in resentencing is in order.

Significantly, Mr. Hackney actually received a three (3) level increase in his adjusted guideline range rather than a decrease or at best no increase. Clearly under the facts the Court heard at sentencing, Defendant's previous counsel should have challenged a three (3) level increase for Defendant's role in the RICO offense. A three (3) level

11

decrease in the offense level would have reduced the mandatory guideline range before a departure from 210 months (Guideline level 37) to 151 months (Guideline level 34). The sentence the Court ultimately imposed, after granting the Government's motion for downward departure, of forty-eight (48) months was approximately twenty-three percent (23%) of the low end of the Guideline range. Using the same ratio, it is probable that he Court would impose a sentence in the thirty-four (34) to thirty-six (36) month range (151 months X .23 = 34.73). A twelve (12) month reduction in a forty-eight (48) month sentence is certainly nontrivial.

Even though Mr. Hackney was not able to fully develop the nature and circumstances of his offense, if the Court reviews what was said at sentencing in the context of 3553(a) post-Booker sentence, the Court will see that a materially different sentence is merited in this case. At a resentencing hearing there are a number of 3553(a)(1) factors, including these and others, that are likely to result in a nontrivial difference in Hackney's sentencing upon the Court's reconsideration.

B. § 3553(a)(2): The Need for the Sentence Imposed to Reflect Seriousness of the Offense and Provide Just Punishment and Deterrence.

The law requires the Court to "impose a sentence **sufficient, but not greater than necessary** to comply with the [following] purposes": "(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a) (emphasis added). Upon the Court's

consideration at a resentencing hearing, these factors weigh heavily in favor of a materially different sentence for Hackney.

Having been a defendant in a criminal proceeding has been a painful and life-altering experience for Mr. Hackney and his family already. The conviction and the resultant uncertainty – not knowing whether he will be able to provide for his family and be a husband and father to his wife and children – have added to Hackney's punishment. In addition, for someone of Hackney's character and stature within his community, the shame of a felony conviction, and the attendant loss of civil rights, is a punishment in and of itself. John Hackney will bear the substantial stigma of a criminal record and having been adjudicated as a felon for the rest of his life.

Mr. Hackney's exposure to criminal charges and the ensuing convictions are sufficient to provide just punishment and deter others from engaging in similar criminal wrongdoing. Further, the Defendant submits that the notion of promoting "respect for the law" should mean more than simply a respect for *obeying* the law. Respect for the law also should include respect for the functions of law enforcement in bringing to justice those who committed criminal offenses and respect for the rights of victims who seek justice and restitution from those who have stolen from them. If considered with a much broader view than simply obeying the law, it is apparent that Mr. Hackney's efforts to ensure that justice was served for both the system and the victims of Mr. Frankel's fraud demonstrated nothing short of extraordinary respect for the law. It would then be appropriate for the Court to consider the manner in which Mr. Hackney awaited sentencing as a form of probation or punishment: his life was on hold, he was at the mercy of law enforcement, and he could be incarcerated for any violation of his bond.

Defendant submits that under the unique circumstances of this case and this Defendant, a sentence that was significantly less than forty-eight (48) months would have been handed down and would have still promoted respect for the law.

Finally, there is no question that a sentence of forty-eight (48) months was not necessary to protect the public from further crimes of the Defendant or to provide him with vocational and educational training, medical care, or "other correctional treatment." Defendant submits that a consideration of these factors likewise demonstrates that a different sentence would have been imposed.

C.    § 3553(a)(6): The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.

Resentencing is appropriate in this case to avoid disparities between Hackney's sentence of forty-eight (48) months imprisonment and sentences of other defendants in related cases stemming from the Martin Frankel fraud. For example, at least three judgments in this District entered in related cases to the instant case, including Mona Kim (case no. 3:99-cr-00235-EBB), Karen Timmins (case no. 3:99-cr-00291-EBB), and John Jordan (case no. 3:99-cr-00235-EBB), evidence sentencing disparity.

Defendant Mona Kim, was sentenced to a term of eighty (80) months following convictions on seven (7) counts including participation in a racketeering enterprise, racketeering conspiracy, money laundering, and wire fraud at the conclusion of a lengthy jury trial. As discussed at Hackney's sentencing hearing, Hackney testified as a cooperating witness for the Government at Mona Kim's trial. The Government stated, "We believe that Mr. Hackney provided credible testimony; that it was reliable testimony. And that, obviously, is important." Transcript at 28. Mona Kim served as

14

Martin Frankel's office manager, assisted Frankel in fleeing the country to escape law enforcement, evaded law enforcement herself by escaping with Frankel, and was found guilty of numerous criminal acts following a jury trial. Compared to Hackney's record of immediately entering a plea and cooperating with the Government over a four (4) year period to expose the fraud and bring perpetrators of the fraud to justice, Hackney's sentence by comparison to Kim's is disproportionate.

Similarly, another associate of Martin Frankel's, Karen Timmins, was adjudicated guilty of one count of misprision of a felony in violation of 18 U.S.C. § 4. Timmins was placed on five (5) years probation for her offense which included six (6) months of home confinement and electronic monitoring. Timmins who worked as Frankel's office manager and is the surrogate mother of his child, was convicted of having "knowledge of the actual commission of a felony." As this Court noted at Hackney's sentencing, "So the offense itself was a very significant offense, and it really affected very many people in a very negative way. So to suggest that five years probation is an appropriate sentence, in my view, is incorrect, and I cannot agree with that."[4] Transcript at 30. Nevertheless, Timmins, whose role in the offense was in closer proximity to Frankel's crimes, received a sentence of five (5) years probation for her role in the same scheme. While this Defendant certainly is not challenging the appropriateness of Timmins's sentence, minimizing his role in the offense, or in any way disparaging Ms. Timmins, Hackney respectfully contends that to the extent five (5) years probation is an appropriate sentence for Ms. Timmins, his forty-eight (48) month sentence is disproportionate and should be revisited by this Court. In the words of the Government's own attorney, "And I know

---

[4] The Defendant understands the Court's reference to "the offense" to reference not just the Defendant's one count of money laundering, but the overarching scheme perpetrated by Frankel as presented in related cases or in the words of the Court, "the whole sordid case" and "this terrible theft." Transcript at 29, 30.

this court had occasion to have Ms. Timmins before you for sentencing.   And the prosecutors in this case believe Mr. Hackney's cooperation was more important that Ms. Timmins's cooperation.   And that he was more forthcoming, in many respects, than Ms. Timmins."   Transcript at 25-26.

Finally,  Mr. Hackney's sentence is disproportionate to that of John Jordan's, who was sentenced to sixty-seven (67) months incarceration for his role in the Frankel scheme.   As the Government discussed at Mr. Hackney's sentencing,

> I would also note – the Government would, respectfully, note for the court that unlike some other people who have been before your Honor, this goes to counsel's comments and remarks talking about Mr. Hackney's understanding of the insurance industry and being something of a neophyte there…The court [ ] had before it Mr. Jordan.  Mr. Jordan was a licensed attorney, and had that background.  And Mr. Jordan received a sentence, for his criminal conduct of 67 months.

Transcript at 26.   Whereas Jordan possessed a high degree of knowledge and skill as an attorney to assist him in perpetrating the fraud, the undisputed record in this case reflects that Mr. Hackney lacked this industry sophistication.   Mr. Hackney's sentence amounts to approximately seventy percent (70%) of Jordan's sentence.   Mr. Hackney respectfully submits that in light of his extensive cooperation with the Government and the applicable 3553(a) factors as compared with Jordan's more prominent role in the offense, Hackney's sentence is disproportionately harsh to Jordan's sentence.

As discussed throughout this section, Hackney's sentence reflects a significant disparity between his sentence and the sentences of other defendants involved in Martin Frankel's fraud.   Accordingly, resentencing is warranted.

## V.    CONCLUSION

While the Defendant certainly appreciates the opportunity to have this matter back before this Honorable Court, the Defendant also recognizes the difficult burden created by the two-step process required by the Crosby decision, which in effect, requires the Court to second guess itself without the benefit of a full blown sentencing hearing.  In this case, however, it is not difficult to see that a post-Booker sentencing hearing would have been a far different hearing than that which occurred on January 4, 2005.  The Defendant submits that there is more than ample evidence in the record to suggest that had the Court been free to consider the totality of the circumstances, including the Section 3553(a) factors, rather than just balancing the offense with the Defendant's cooperation, that a nontrivially different sentence lower than forty-eight (48) months would be imposed.  Finally, it should be noted the Defendant has now served one half of the sentence imposed in January 2005.  Accordingly, it is respectfully submitted that any reduction in Mr. Hackney's sentence below forty-eight (48) months is nontrivial.

WHEREFORE, premises considered, Hackney respectfully requests that this Honorable Court grant this Motion and enter an Order scheduling the instant matter for resentencing and awarding any other relief the Court deems necessary, proper, and just.

Respectfully submitted,


/s/ G. Douglas Jones

G. Douglas Jones
Whatley Drake & Kallas, LLC
2001 Park Place North
Suite 1000
Birmingham, AL  35203
Telephone: 205.328.9576
Facsimile: 205.328.9669
E-mail:  ecf@whatleydrake.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 16th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Curtis L. Bowe, III
ANDREWS & BOWE, PLLP
6160 Shallowford Road
Suite 102
Chattanooga, TN 37421

Mark G. Califano
U.S. Attorney's Office
915 Lafayette Blvd. Room 309
Bridgeport, CT 06604

John H. Durham
Assistant United States Attorney
Connecticut Financial Center
157 Church Street, Floor 23
New Haven, CT 06510

/s/ G. Douglas Jones
Of Counsel